## IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## OFFICE OF SPECIAL MASTERS
No. 12-733V
Filed: March 28, 2014

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
| | |
|---|---|
| PHILIP SAPIENZA and PAMELA SAPIENZA, parents and next friends of A.S.,              Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br>             Respondent. | Damages Decision Based on Proffer; MMR; Table encephalopathy. |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Joseph F. McDowell, III, Esq.*, McDowell & Osburn, PA, Manchester, NH for petitioners.
*Heather Pearlman, Esq.*, U.S. Department of Justice, Washington, DC for respondent.

### **DECISION AWARDING DAMAGES**[1]

**Vowell,** Chief Special Master:

    On October 26, 2012, Philip and Pamela Sapienza filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] [the "Vaccine Act" or "Program"] on behalf of their daughter, A.S.

    The petition alleges that A.S. suffered an "acute encephalopathy and/or encephalitis and the onset of chronic encephalopathy/seizure disorder" after receiving the measles, mumps, and rubella ["MMR"] vaccine on January 15, 2010. Petition at 1. Alternatively, petitioners allege that the combination of the MMR, diphtheria, tetanus, and pertussis ["DTaP"], varicella, and polio vaccines A.S. received on January 15, 2010, was the cause-in-fact of her "ongoing" condition. *Id.*

    On January 29, 2013, shortly after respondent conceded that petitioners were entitled to compensation,[3] I issued a ruling on entitlement and this case entered the

---

[1] When this decision was originally issued, petitioners were informed that the decision would be posted in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). Petitioners were also notified that they could seek redaction pursuant to 42 U.S.C. § 300aa-12(d)(4)(B); Vaccine Rule 18(b). Petitioners' timely request for redaction was granted. Thus, this decision is being posted with the name of the minor child redacted to initials.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2006).

damages phase.  On March 27, 2014, respondent filed a proffer on award of compensation detailing compensation for life care items, lost future earnings, pain and suffering, and past unreimbursable expenses.[4]

The proffer indicates that petitioners agree with each aspect of the compensation award.  Pursuant to the terms stated in the attached Proffer, **I award petitioners:**

1. **A lump sum payment of $993,374.96 in the form of a check payable to petitioners, as guardian(s)/conservator(s) of A.S., for the benefit of A.S.,** representing compensation for lost future earnings ($721,296.94), pain and suffering ($227,961.32), and life care expenses expected to be incurred during the first year after judgment ($44,116.70).  This payment shall not be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of A.S.;

2. **A lump sum payment of $14,462.96 in the form of a check payable to petitioners, Philip and Pamela Sapienza,** representing compensation for past unreimbursable expenses; and

3. An amount sufficient to purchase an annuity contract, subject to the conditions described in the Proffer, paid to the life insurance company from which the annuity will be purchased, that will provide payments for the life care items contained in the life care plan.

These amounts represent compensation for all damages that would be available under § 300aa-15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

                                          <u>s/Denise K. Vowell</u>
                                          Denise K. Vowell
                                          Chief Special Master

---

[3] On January 24, 2013, respondent filed her Rule 4(c) report, which stated that petitioners "are entitled to a vaccine award because the medical records demonstrate that [A.S.] suffered from an encephalopathy within five (5) to fifteen (15) days of receiving an MMR vaccine as defined in the Vaccine Injury Table, 42 C.F.R. §§ 100.3(a)(III)(B) and 100.3(b)(2).  Further, there is not a preponderance of evidence that [A.S.'s] encephalopathy was due to factors unrelated to the MMR vaccine."

[4] The proffer notes that there are no outstanding Medicaid liens against petitioners.

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party filing a notice renouncing the right to seek review.

UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

_____
Philip Sapienza and Pamela Sapienza,        )
Parents and Next Friends of A.S.,           )
                                            )
      Petitioners,                         )
v.                                          )    No. 12-733V
                                            )    Chief Special Master Vowell
SECRETARY OF THE DEPARTMENT OF              )    ECF
HEALTH AND HUMAN SERVICES,                  )
                                            )
      Respondent.                          )
_____ )

**RESPONDENT'S PROFFER ON AWARD OF COMPENSATION**

**I.**    **Items of Compensation**

    A.    Life Care Items

The respondent engaged life care planner, Laura Fox, MSN, RN, CNLCP, and petitioners engaged William H. Burke, Ph.D., to provide an estimation of A.S.'s future vaccine-injury related needs. For the purposes of this proffer, the term "vaccine-related" is as described in respondent's Rule 4(c) report filed January 24, 2013. All items of compensation identified in the life care plan are supported by the evidence, and are illustrated by the chart entitled Appendix A: Items of Compensation for A.S., attached hereto as Tab A.[1] Respondent proffers that A.S. should be awarded all items of compensation set forth in the life care plan and illustrated by the chart attached at Tab A. Petitioners agree.

    B.    Lost Future Earnings

The parties agree that based upon the evidence of record, A.S. will not be gainfully

---

[1] The chart at Tab A illustrates the annual benefits provided by the life care plan. The annual benefit years run from the date of judgment up to the first anniversary of the date of judgment, and every year thereafter up to the anniversary of the date of judgment.

employed in the future. Therefore, respondent proffers that A.S. should be awarded lost future earnings as provided under the Vaccine Act, 42 U.S.C. § 300aa-15(a)(3)(B). Respondent proffers that the appropriate award for A.S.'s lost future earnings is $721,296.94. Petitioners agree.

    C.    <u>Pain and Suffering</u>

Respondent proffers that A.S. should be awarded $227,961.32 in actual and projected pain and suffering. This amount reflects that the award for projected pain and suffering has been reduced to net present value. <u>See</u> 42 U.S.C. § 300aa-15(a)(4). Petitioners agree.

    D.    <u>Past Unreimbursable Expenses</u>

Evidence supplied by petitioners documents their expenditure of past unreimbursable expenses related to A.S.'s vaccine related injury. Respondent proffers that petitioners should be awarded past unreimbursable expenses in the amount of $14,462.96. Petitioners agree.

    E.    <u>Medicaid Lien</u>

Petitioners represent that there are no outstanding Medicaid liens against A.S.

**II.**    <u>**Form of the Award**</u>

The parties recommend that the compensation provided to A.S. should be made through a combination of lump sum payments and future annuity payments as described below, and request that the Chief Special Master's decision and the Court's judgment award the following:

    A.    A lump sum payment of $993,374.96, representing compensation for lost future earnings ($721,296.94), pain and suffering ($227,961.32), and life care expenses for Year One ($44,116.70), in the form of a check payable to petitioners as guardian(s)/conservator(s) of A.S., for the benefit of A.S. No payments shall be made until petitioners provide respondent with documentation establishing that they have been appointed as the guardian(s)/

2

conservator(s) of A.S.'s estate;

  B. A lump sum payment of $14,462.96, representing compensation for past unreimbursable expenses, payable to Philip Sapienza and Pamela Sapienza, petitioners;

  C. An amount sufficient to purchase the annuity contract,[2] subject to the conditions described below, that will provide payments for the life care items contained in the life care plan, as illustrated by the chart at Tab A, attached hereto, paid to the life insurance company[3] from which the annuity will be purchased.[4] Compensation for Year Two (beginning on the first anniversary of the date of judgment) and all subsequent years shall be provided through respondent's purchase of an annuity, which annuity shall make payments directly to petitioners as guardian(s)/conservator(s) of the estate of A.S., for the benefit of A.S., only so long as A.S. is alive at the time a particular payment is due. At the Secretary's sole discretion, the periodic payments may be provided to petitioners in monthly, quarterly, annual or other installments. The "annual amounts" set forth in the chart at Tab A describe only the total yearly sum to be paid to petitioners and do not require that the payment be made in one annual installment.

---

[2] In respondent's discretion, respondent may purchase one or more annuity contracts from one or more life insurance companies.

[3] The Life Insurance Company must have a minimum of $250,000,000 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

  a. A.M. Best Company: A++, A+ A+g, A+p, A+r, or A+s;

  b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

  c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

  d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

1. <u>Growth Rate</u>

Respondent proffers that a four percent (4%) growth rate should be applied to all non-medical life care items, and a five percent (5%) growth rate should be applied to all medical life care items. Thus, the benefits illustrated in the chart at Tab A that are to be paid through annuity payments should grow as follows: four percent (4%) compounded annually from the date of judgment for non-medical items, and five percent (5%) compounded annually from the date of judgment for medical items. Petitioners agree.

2. <u>Life-contingent annuity</u>

Petitioners will continue to receive the annuity payments from the Life Insurance Company only so long as A.S. is alive at the time that a particular payment is due. Written notice shall be provided to the Secretary of Health and Human Services and the Life Insurance Company within twenty (20) days of A.S.'s death.

3. <u>Guardianship</u>

No payments shall be made until petitioners provided respondent with documentation establishing that they have been appointed as the guardian(s)/conservator(s) of A.S.'s estate. If petitioners are not authorized by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.S., any such payment shall be made to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of A.S. upon submission of written documentation of such appointment to the Secretary.

---

[4] Petitioner authorizes the disclosure of certain documents filed by the petitioner in his case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

**III.**   **Summary of Recommended Payments Following Judgment**

    A.    Lump sum paid to petitioners as guardian(s)/conservator(s) of A.S.'s estate: **$ 993,374.96**

    B.    Lump sum paid to petitioners: **$ 14,462.96**

    C.    An amount sufficient to purchase the annuity contract described above in section II.C.

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

RUPA BHATTACHARYYA
Director
Torts Branch, Civil Division

VINCENT J. MATANOSKI
Deputy Director
Torts Branch, Civil Division

LYNN E. RICCIARDELLA
Senior Trial Attorney
Torts Branch, Civil Division

*/S/ HEATHER L. PEARLMAN*
HEATHER L. PEARLMAN
Senior Trial Attorney
Torts Branch, Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, D.C. 20044-0146
Telephone: (202) 353-2699

Dated:   March 27, 2014